# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JILL H. COFFMAN,**<br>Plaintiff**,**<br>vs.<br>**QUEEN OF THE VALLEY MEDICAL CENTER,**<br>Defendant**.** | CASE NO. 17-cv-05575-YGR<br><br>**ORDER GRANTING PETITION FOR INJUNCTION PURSUANT TO SECTION 10(J) OF THE NATIONAL LABOR RELATIONS ACT** |

Petitioner Jill H. Coffman, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board ("Petitioner), filed a Petition for Temporary Injunction under Section 10(j) of the National Labor Relations Act on September 26, 2017, against respondent Queen of the Valley Medical Center ("QVMC"). (Dkt. No. 1, "Petition.") The Court set the matter for hearing and ordered the parties to brief their arguments and submit evidence in the form of affidavits. The Court heard argument on November 21, 2017.

Petitioner contends that it is likely to prevail on the merits of the underlying administrative proceedings in Board Cases 20-CA-191739, 20-CA-196271, 20-CA-197402, and 20-CA-197403, alleging that that QVMC, has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1), (3), and (5) of the Act (29 U.S.C. § 158(a)(1), (2), (3)) affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act (29 U.S.C. § 152(6), (7).) Petitioner further contends that these violations of the Act are likely to be repeated or continued and will irreparably harm QVMC's employees in the previously certified bargaining unit, National Union of Healthcare Workers ("NUHW," or "the Union"), and the public interest, and will thwart the purposes and policies of the Act.

A district court may grant a request for a preliminary injunction under Section 10(j) of the NLRA so long as the petitioning Regional Director of the National Labor Relations Board establishes: a likelihood of success on the merits of the underlying unfair labor practice claims; a

United States District Court
Northern District of California

1 | likelihood that irreparable harm will occur in the absence of preliminary relief; that the balance of hardships tips in favor of a preliminary injunction; and that such an injunction is in the public interest. *Frankl ex rel. N.L.R.B. v. HTH Corp.*, 693 F.3d 1051, 1062 (9th Cir. 2012) *(Frankl II)* (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). In the Ninth Circuit, district courts consider "traditional equitable criteria" while keeping in mind the "underlying purpose of § 10(j) is 'to protect the integrity of the collective bargaining process and to preserve the [NLRB's] remedial power while it processes the charge.'" *Small v. Avanti Health Sys., LLC,* 661 F.3d 1180, 1187 (9th Cir. 2011) (quoting *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 957 (9th Cir. 2010)). "*Winter* overturned [the Ninth Circuit's] precedents that allowed district courts to grant injunctions when a plaintiff demonstrated a strong likelihood of prevailing on the merits, but only a possibility of irreparable harm . . . . [but] did not change the requisite showing for any individual factor other than irreparable harm." *Small*, 661 F.3d at 1187.

The Court, having carefully considered the briefs, arguments of counsel, and admissible evidence[1] in support of and in opposition to the Petition, finds and concludes as follows:

**Finding No. 1.**

Petitioner has demonstrated a likelihood of success on the merits of the underlying Board Cases. To show a likelihood of success on the merits the Petitioner must show a "probability that the Board will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that this Court would grant a petition enforcing that order, if such enforcement were sought." *Frankl II*, 693 F.3d at 1062 (citing *Frankl v. HTH Corp. (Frankl I),* 650 F.3d 1334, 1355 (9th Cir.2011), *cert. denied,* 566 U.S. 904 (2012)). Petitioner meets this burden if it can "produc[e] some evidence to support the unfair labor practice charge, together with an arguable legal theory." *Id.* (quoting *Frankl I*, 650 F.3d at 1356). The Regional Director's

---

[1] Petitioner has objected to the affidavits of Candella, Schelling, and Romero, as providing testimony beyond or inconsistent with their testimony before the administrative law judge. To the extent the affidavits submitted provide testimony beyond that given in the administrative proceedings, the objection is **SUSTAINED**. QVMC objected to evidence offered by Petitioner on reply. The affidavits of Poulson submitted with the reply are addressed to issues pertinent to the factors for issuance of 10(j) relief and within the scope of rebuttal. The objection is **OVERRULED**.

2

1 petition for a 10(j) injunction is owed "special deference" when the Board authorizes it, since this may indicate the Board's eventual decision on the merits. *Id.* at 1062 (citing *Small,* 661 F.3d at 1187).

### A. Refusal to Bargain

Petitioner has presented persuasive evidence that: (a) the Board certified NUHW as the representative of the bargaining unit; (b) QVMC initially engaged in bargaining with NUHW after the election, through the December 22, 2016 certification by the Region of NUHW as the exclusive collective bargaining representative, until March 16, 2017; (c) QVMC subsequently withdrew its recognition of NUHW and refused to bargain, in violation of sections 8(a)(1) and 8(a)(5). Petitioner's evidence is sufficient to support a likelihood of succeeding on the merits of its theory that QVMC's communications with NUHW from the time of the election to March 16, 2017, demonstrated unconditional bargaining which waived the preservation of its certification challenge.

"Under well-established law, an employer is not relieved of its obligation to bargain with a certified representative of its employees pending Board consideration of a request for review." *Audio Visual Servs. Grp., Inc. d/b/a Psav Presentation Servs. & Int'l All. of Theatrical Stage Employees, Local 15*, 365 NLRB No. 84 (May 19, 2017) (citing *Benchmark Industries*, 262 NLRB 247, 248 (1982), *enf'd* 724 F.2d 974 (5th Cir. 1984)). "In order to challenge certification of a collective bargaining unit, an employer must refuse to recognize a union after its certification." *Technicolor Gov't Servs., Inc. v. N.L.R.B.*, 739 F.2d 323, 326 (8th Cir. 1984). "If the union files unfair labor practice charges for refusal to bargain, under § 8(a)(5) of the Act, the employer may then raise the issue of the propriety of the unit as an affirmative defense to the charges" in order to obtain judicial review of the certification determination by the Board." *Id.* Failure to follow this procedure waives the right to contest certification, and thus the defense to the refusal to bargain charge. *Id.* As the D.C. Circuit stated in *Terrace Gardens Plaza, Inc. v. N.L.R.B.*:

> If [the employer] prevails on its affirmative defense, then the certification will be held invalid and the Board's finding that it committed an unfair labor practice [by refusing to bargain] will be vacated. Alternatively, the [employer] may avoid the unfair labor practice charge altogether by agreeing unconditionally to bargain. *It*

3

> *may negotiate with, or challenge the certification of, the Union; it may not do both at once . . . .* When, as happened here, the employer reserves the right (*i.e.,* implicitly threatens) to challenge the union's certification in the court of appeals, it is trying to avoid the necessity to choose between the alternatives it has under the statute. As we explained above, *the employer must either bargain unconditionally or, if it wants to contest the union's right to represent the employees, refuse to bargain and defend itself in an unfair labor practice proceeding*.

91 F.3d 222, 225-26 (D.C. Cir. 1996) (emphasis supplied). Thus, "[o]nce an employer honors a certification and recognizes a union by entering into negotiations with it, the employer has waived the objection that the certification is invalid." *Technicolor*, 739 F.2d at 326 (citing *King Radio Corp. v. NLRB,* 398 F.2d 14, 20 (10th Cir.1968)); *see also Schwarz Partners Packaging, LLC d/b/a Maxpak & United Steelworkers Int'l Union*, 362 NLRB No. 138 (June 26, 2015) (once employer recognized union, bargained with it on certain issues on three dates, and scheduled meetings to negotiate a collective bargaining agreement, waived its right to challenge validity of union's certification). When the certification issues are presented on review of the unfair labor practice claims, the Board does not relitigate the issues absent special circumstances. *See, e.g.*, *Benchmark Indus., Inc.*, 262 NLRB 247, 248 (1982) ("It is well settled that in the absence of newly discovered or previously unavailable evidence or special circumstances a respondent in a proceeding alleging a violation of Section 8(a)(5) is not entitled to relitigate issues which were or could have been litigated in a prior representation proceeding"). Upon review before the circuit court, the scope of review of a Board decision certifying an election is "extremely limited" and will not be disturbed by the courts if it is supported by substantial evidence. *See N.L.R.B. v. Downtown Bid Servs. Corp.*, 682 F.3d 109, 112 (D.C. Cir. 2012).

QVMC's citation to *Freds Inc. & Southern Reg'l Joint Bd., Unite, AFL-CIO, CLC*, 343 NLRB 138, 139 (2004) does not undermine this conclusion. There, an employer refused to bargain because it was seeking to raise a technical refusal challenge and contest the representation results, but began bargaining and reached the terms of a collective bargaining agreement after the filing of the unfair labor practices claims. *Id.* at 138 (initial claim filed January 2004, bargaining began March 2004). In the Board proceedings, the argument made by the employer was that these negotiations meant it had not violated the Act by refusing to bargain. *Id*. The Board soundly

4

rejected this argument stating that "where an employer continues to challenge the validity of a union's certification, it is effectively refusing to bargain with the union, even where it has stated that it is willing to engage in negotiations." *Id.* The Board did not decide whether this conduct waived the employer's ability to raise a representation argument on appeal. To the contrary, the Board rejected the representation arguments, stating only that "[a]ll representation issues raised by the Respondent were or could have been litigated in the prior representation proceeding" and that, having failed to offer any reason to reexamine the Board's prior determination in that representation proceeding, "Respondent has not raised any representation issue that is properly litigable in this unfair labor practice proceeding." *Id.* at 139.

### B. Discrimination

Petitioner has also demonstrated a likelihood of success on the merits of the charge of unlawful discrimination against Miguel Arroyo in violation of section 8(a)(1) and (3). Petitioner has presented evidence that: Arroyo's department director made comments disparaging of unions and of NUHW during the organizing campaign; that the department director identified Arroyo having made statements in favor of the Union which upset him; that he wanted to make Arroyo "hurt" for supporting the Union by changing Arroyo's schedule so that he would lose shift differential pay and that would burden his family since Arroyo and his wife had worked on the same shift for years and he knew they only had one car to commute from Fairfield; and that he was working with the Human Resources department to determine how to manipulate a change to the schedule without it appearing retaliatory. Arroyo's schedule was changed at or near the time of the union election. (*See* Novoa Declaration Exh. D at 26, 32; Exh H at 88, 96; Exh. M at 350-52, 354.)

To establish unlawful discrimination in violation of section 8(a)(3), Petitioner must offer evidence that the employee was engaged in protected activity, the employer had knowledge of that activity, and the employer's hostility to that activity "contributed to" its decision to take an adverse action against the employee. *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 278 (1994) (1983). Petitioner's evidence in the record makes out a *prima facie* case of unlawful discrimination sufficient to support likely success before the Board

5

on this claim. While QVMC offers some evidence of a non-discriminatory reason for the shift change, the evidence of retaliatory animus undermines the likelihood that QVMC can show that it would have taken the same action in the absence of Arroyo's union activity.

**Finding No. 2.**

Petitioner has offered sufficient evidence of a likelihood of irreparable harm in the absence of an injunction. Likely irreparable harm is established in a section 10(j) case by showing "a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief." *Frankl II*, 650 F.3d at 1362. When the employer unlawfully refuses to bargain, "[the] union is likely weakened in the interim, and it will be difficult to recreate the original status quo with the same relative position of the bargaining parties . . . [which] will increase as time goes on." *Id.* at 1363.

Petitioner has presented evidence that employees' attendance at union meetings has fallen off and that employees have expressed fear of retaliation or hostility if they are identified as union supporters. (Novoa Decl., Exh I at 143-45; Exh. J. 303, 305; Exh K 322, 324-25, 330-31.) Petitioner also presented evidence that QVMC made unilateral changes including changes to schedules, hiring, representation at disciplinary hearings, and health plan benefits. (Novoa Decl. at Exh J at 302, 304, 307-08; Exh K 323-24, 328-29, 331-33.)

**Finding No. 3.**

Considering the balance of the harms as between issuance or denial of an injunction, Petitioner's showing of likely irreparable harm outweighs QVMC's evidence that it will be harmed in the interim. On the one hand, QVMC may experience hardship if required to bargain even if a successful certification challenge may render such bargaining ineffective. However, that is less harmful than the alternative which would protect the status quo prior the QVMC's alleged withdrawal of recognition, *i.e.* that NUHW was certified as the bargaining representative for the employees in the bargaining unit. Further, QVMC has experience with NUHW in other facilities. The impact of having to bargain will merely be an extension of other practices as opposed to a new endeavor. As the Ninth Circuit has affirmed in the 10(j) context, "any harm to the Company from the bargaining order is offset by the value of lending relief to the Union and the employees

6

1 now, rather than limiting the extent of possible future relief to inadequate make-whole
2 compensation." *Scott ex rel. N.L.R.B. v. Stephen Dunn & Assocs.*, 241 F.3d 652, 670 (9th Cir.
3 2001) (internal citations and quotations omitted) *abrogated on other grounds in Winter*, *supra*,
4 555 U.S. 7 at 20-22.

**Finding No. 4.**

The public interest favors enjoining conduct contrary to the purposes of the Act. The public interest in a Section 10(j) case "is to ensure that an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge." *Frankl II*, 650 F.3d at 1365; *see also Avanti Health Sys.*, 661 F.3d at 1197. Injunctive relief in the context of an unlawful withdrawal of recognition is particularly appropriate. *Frankl II*, 650 F.3d at 1362. Contrary to QVMC's argument, because this Court does not make a final determination of the underlying merits, an injunction will not "insulate a faulty and flawed election from judicial review," which it is free to seek in the normal course. Moreover, QVMC's argument that an injunction under section 10(j) is improper in the context of a technical refusal to bargain is without support. See, for example, *Kendellen v. Interstate Waste Servs. of New Jersey*, No. CIV. 06-5694 (SRC), 2007 WL 121435 (D.N.J. Jan. 11, 2007) which rejected just such an argument by an employer, finding that a technical refusal defense "does not immunize the employer from injunctive relief . . . . [; e]xposure to an unfair labor charge and the possibility of [10(j)] injunctive relief is a risk the employer must choose to bear when engaging in a technical refusal to bargain." *Id.* at 3.

**Finding No. 5.**

The Court concludes that, in balancing the equities in this matter, the said violations of the Act will likely be repeated or continued and will irreparably harm QVMC's employees in the previously certified bargaining unit, their previously certified bargaining agent, NUHW, and the public interest, and will thwart the purposes and policies of the Act, unless temporarily enjoined. Given that the arbitration before the administrative law judge is in its final stages, final resolution of the underlying matters should be concluded shortly absent appeals.

///

# ORDER

Therefore, based upon the foregoing, it is **ORDERED, ADJUDGED AND DECREED** that, pending the final disposition of the matters now pending before the Board, QVMC, its officers, representatives, supervisors, agents, servants, employees, attorneys and all persons acting on its behalf or in participation with it, be, and they hereby are, enjoined and restrained from:

(a) Making changes to employees' terms and conditions of employment in retaliation for activities or affiliation with the Union;

(b) Refusing to recognize and bargain in good faith with the Union in the following unit:

All of Respondent's nonprofessional employees, including technical employees, employed at Respondent's facilities located at 1000 Trancas Street, 980 Trancas Street, 3448 Villa Lane, and 3421 Villa Lane in Napa, California; but excluding all other employees, skilled maintenance employees, business office clerical employees, confidential employees, guards and supervisors, as defined in the Act.

(c) Unilaterally instituting changes in employees' terms and conditions of employment without first providing the Union with advanced notice and an opportunity to bargain over the changes;

(d) Refusing to provide the Union with requested, relevant information;

(e) Denying employees their right to have a Union representative represent them at an investigatory meeting they reasonably believe could lead to discipline, and;

(f) In any other like or related manner, interfering with, restraining, or coercing employees in the exercise of their Section 7 rights.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, pending the final disposition of the matter herein now pending before the Board, Respondent, its officers, representatives, supervisors, agents, servants, employees, attorneys and all persons acting on its behalf or in participation with it, shall take the following affirmative steps **within five business days** of the issuance of the Court's order:

(a) Offer Miguel Arroyo his previous work schedule, to restore him to his shift and department that he held before November 2016, displacing any employee who had taken his former position and shift, if necessary;

(b) Recognize the Union as the exclusive collective-bargaining representative of employees in the following unit:

> All nonprofessional employees, including technical employees, employed at Respondent's facilities located at 1000 Trancas Street, 980 Trancas Street, 3448 Villa Lane, and 3421 Villa Lane in Napa, California; but excluding all other employees, skilled maintenance employees, business office clerical employees, confidential employees, guards and supervisors, as defined in the Act.

(c) Bargain collectively and in good faith with the Union as the exclusive representative of the employees in the Unit with respect to wages, hours, and other terms and conditions of employment;

(d) Upon the Union's request, rescind any and all unilaterally implemented changes to employees' terms and conditions of employment and restore the status quo ante prior to Respondent's withdrawal of recognition and unilateral changes;

(e) Restore the Union's access to Respondent's facility and work schedules;

(f) Provide the Union with requested, relevant information;

(g) Permit employees to have a Union representative represent them in investigatory meetings they reasonably believe would lead to disciplinary action;

(h) Post copies of this Order at its facilities in Napa, California, in all places where notices to its employees are customarily posted; maintain these postings during the Board's administrative proceeding free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to its facilities to monitor compliance with this posting requirement;

(i) **Within ten (10) days** of the issuance of this Order, hold a mandatory meeting or meetings, during work time at a time scheduled to ensure maximum employee attendance, at which this Order is to be read to the employees by a responsible management official in the presence of a Board Agent, or at Respondent's option, by a Board Agent in the presence of a responsible management official (footnote 1 and legal citations may be omitted from the reading); and

///

9

(j) **Within fifteen (15) days** of the issuance of this Order, file with the Court and serve upon the Regional Director of Region 20 of the Board, a sworn affidavit from a responsible official describing with specificity the manner in which QVMC has complied with the terms of the Court's Order, including the locations of the posting of the Order.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court shall maintain continuing jurisdiction to enforce this Order, and that upon disposition of the matters pending before the Board, the Petitioner shall notify the Court and seek an order dissolving the injunction and dismissing the Petition.

**IT IS SO ORDERED.**

Dated: November 30, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**